UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

COREY MILLEDGE,

    Plaintiff,

v.                                            Case No. 3:17-cv-483-J-39MCR

KENNETH S. TUCKER, et al.,

    Defendants.
_____

## **ORDER**

### **I. Background**

Before the Court are the following motions: (1) Plaintiff's Motion to Compel Discovery (Doc. 97; First Discovery Motion); (2) Plaintiff's Motion to Compel Discovery (Doc. 98; Second Discovery Motion); (3) Plaintiff's Motion to Compel Discovery and for Sanctions (Doc. 99; Third Discovery Motion); (4) Plaintiff's Motion for Leave to Serve Additional Interrogatories (Doc. 100; Motion for Leave); (5) Plaintiff's Motion to Appoint Counsel (Doc. 101); (6) Plaintiff's Motion for Leave to File a Reply (Doc. 102); (7) Defendants' Motion for Extension of Time to File Summary Judgment (Doc. 108; Defendants' Motion); (8) Plaintiff's Motion for an Order (Doc. 109); and (9) Plaintiff's second Motion for an Order (Doc. 110). Defendants have responded to Plaintiff's motions except for his Motion to Appoint Counsel (Docs. 104, 105, 106, 107, 111, 112). Plaintiff has not responded to Defendants' Motion, though he filed a Notice before Defendants filed their motion (Doc. 103) indicating that he would not agree to an extension of time if Defendants were to request one.

In his Amended Complaint (Doc. 27), Plaintiff asserts three claims against ten Defendants, whom he names in their individual capacities: (1) retaliation under the First Amendment against Defendant Parrish; (2) deliberate indifference to a serious risk of harm under the Eighth Amendment against Defendants Woodall, Tucker, and Perry; and (3) excessive use of force or failure to intervene under the Eighth Amendment against Defendants Box, Greene, Howell, Nieves, Polanco, Parrish, and Sodrel. Plaintiff's claims arise out of two beating incidents that allegedly occurred on June 22, 2012, involving Defendants Box, Greene, Howell, Nieves, Polanco, Parrish, and Sodrel. The alleged beatings caused injuries to Plaintiff's eyes, right shoulder, and back.

The Court will address the substance of motions one through four (as numbered above) and Plaintiff's second Motion for an Order (Doc. 110). The remainder of the motions will be addressed in the decretal. First, however, the Court will address the parties' inability to resolve the various discovery disputes without the need for Court intervention. In their responses to each of Plaintiff's discovery motions, Defendants assert that Plaintiff did not file the respective motions in good faith because he filed his motions only two days after he mailed Defendants' counsel a letter disputing some of their discovery responses.

While the Court recognizes that Plaintiff has not made a good-faith effort to resolve the discovery disputes, Defendants' responses to the various motions reflect that they stand by their objections to Plaintiff's discovery requests to the extent the discovery dispute is not moot. Thus, directing the parties to confer in good faith likely would result in simply delaying this Court's review of the issues presently before it. In its desire not to further delay this case and to consider dispositive motions with all relevant facts before it,

the Court will address the substantive discovery issues. However, the Court cautions the parties that they must comply with Rule 3.01(g), Local Rules of the United States District Court for the Middle District of Florida, which requires the parties to confer in a "good faith effort to resolve the issues raised by the motion." Future motions that require but lack the 3.01(g) certification or demonstrate the parties' failure to confer in good faith may be denied.

## II. First Discovery Motion

In his First Discovery Motion, Plaintiff requests an order directing Defendants to produce documents in response to his Request for Production (RFP), Nos. 4, 5, 6, 7, 9, 13, 16, 17, and 18. Plaintiff supports the motion with a copy of the RFP he propounded on Defendants (Doc. 97-1); the RFP response by Defendants (Doc. 97-2; RFP Response); and Plaintiff's response to Defendants' RFP Response, which he mailed to Defendants on July 30, 2018 (Doc. 97-3; Plaintiff Response), two days before he mailed the First Discovery Motion. In response to the First Discovery Motion (Doc. 105; First Response), Defendants argue their objections to the disputed RFPs were reasonable because many of Plaintiff's requests were overbroad, vague, not relevant, and/or burdensome. See First Response at 4-7.

Upon review, the Court finds the First Discovery Motion is due to be granted in part and denied in part. Plaintiff's First Discovery Motion is due to be granted to the extent that the Court overrules Defendants' objections to Plaintiff's RFPs Nos. 13, 17, and 18. In RFP No. 13, Plaintiff seeks "[a]ll medical records and mental health records of Plaintiff from

June 22, 2012 to the present." See RFP Response at 5.[1] Defendants objected to this RFP on the basis that Plaintiff may obtain his own medical records through subpoena. See id. In their response to Plaintiff's First Discovery Motion, Defendants also note that Plaintiff refused to sign a waiver for the release of his medical records (Doc. 105-1), which forced Defendants to subpoena the records instead.[2] See First Response at 5-6. Plaintiff denies having been asked to sign a waiver for release of his medical records. See Plaintiff Response at 9. The Court finds that Plaintiff's request to review his medical records, which Defendants recognize are relevant to the issues, is reasonable. Defendants must make available for Plaintiff's review and inspection records responsive to his RFP No. 13.

In RFP No. 17, Plaintiff seeks "[a]ll coaching files, discipline files, use of force files, inquiries and complaint files and memorandum files of each named Defendant." See RFP Response at 6. Defendants objected to this request on the basis that Plaintiff's request was unclear, had no limit, and sought documents not relevant to the claims and that would likely be inadmissible at trial. Id. In addition, Defendants objected because Plaintiff suffered only minor injuries, and the burden to comply would outweigh any benefit to Plaintiff, and the requested information could "potentially encompass protected attorney-client privileged information and attorney work product." Id.

---

[1] Page numbers reflect the pagination assigned by the Court's CM/ECF docketing system, which are found at the top of each page.

[2] At the time of filing their response to Plaintiff's First Discovery Motion, on August 17, 2018, Defendants had not yet received the medical records they requested through subpoena. See First Response at 5-6. Plaintiff filed a Notice on September 28, 2018 (Doc. 113), stating that the Defendants received his medical and mental health records in September.

A party opposing discovery must do more than state a generic, boilerplate objection. Rather, the party must make some showing that the stated objection is appropriate. See Diehl v. Bank of Am. Corp., No. 3:09-cv-1220-J-25MCR, 2010 WL 3340565, at *3 n.4 (M.D. Fla. Aug. 23, 2010); see also Calderon v. Reederei Claus-Peter Offen GmbH & Co., No. 07-61022-CIV, 2008 WL 4194810, at *2 (S.D. Fla. Sept. 11, 2008) ("[A] party resisting discovery must make some showing as to how each discovery request is not relevant and/or is overly broad or unduly burdensome."). Defendants have made no showing that the requested documents are privileged. Moreover, admissibility is not the yardstick for discovery. Federal Rule of Civil Procedure 26(b)(1) permits parties to obtain discovery relevant to the party's claim or defense, regardless of whether the evidence would be admissible at trial. See Fed. R. Civ. P. 26(b)(1).

It is conceivable that, if disciplinary files exist documenting instances of excessive use of force or a failure to intervene against the Defendants involved in the alleged beating incidents, they may be relevant to Plaintiff's claims of deliberate indifference, failure to intervene, and/or excessive use of force. However, the Court finds that RFP No. 17, while relevant, is overbroad as stated. Thus, the Court limits the scope of the request such that Defendants must produce disciplinary reports concerning allegations of excessive force or failure to intervene involving Defendants Parrish, Box, Greene, Howell, Nieves, Polanco, and Sodrel for the five-year period preceding the date of the alleged incidents.[3]

---

[3] To the extent the relevant documents contain private or privileged information, Defendants may redact the documents only to the extent necessary to protect any such information.

In RFP No. 18, Plaintiff seeks "[a]ll grievances and grievance appeals initiated by [Plaintiff] from March 28, 2011 to June 22, 2012 relat[ing] to the incident sued upon and allegations alleged." See RFP Response at 7. Defendants objected, stating that Plaintiff "has access to obtaining his own grievances," though they disclosed "all responsive documentation related to the request . . . already in their possession." See id. Plaintiff asserts that the Department of Corrections (DOC) "does not allow inmates to review their grievance files nor obtain copies." See Plaintiff Response at 13. Thus, the Court finds Plaintiff's request reasonable and directs Defendants to disclose any documents responsive to the request beyond those already made available to Plaintiff.

In all other respects, Plaintiff's First Discovery Motion is due to be denied. The Court sustains Defendants' objections to RFP Nos. 4, 5, 6, 7, 13, and 16. With respect to RFP No. 9, the Court finds Defendants' stated objection is unpersuasive. In RFP No. 9, Plaintiff requests "housing records sufficient to show the name of inmates who were housed on the wing with Plaintiff on the date of the incident sued upon." See RFP Response at 5. Defendants objected, asserting that the documents requested are protected from disclosure by the Health Insurance Portability and Accountability Act (HIPAA). See id. HIPAA provides protection against the disclosure of protected health information that is generated by a health care provider. Plaintiff is not requesting medical records or the disclosure of protected health information. Rather, he is seeking the names of potential witnesses to the beating incidents through disclosure of documents prepared by non-health care providers. Plaintiff's RFP No. 9, however, is overbroad as stated. Plaintiff does not limit his request by identifying cell numbers nearby the cells in which his

alleged beatings occurred. Thus, Plaintiff's First Discovery Motion is due to be denied as to this request as well.[4]

### III. Second Discovery Motion

Plaintiff's Second Discovery Motion also relates to Defendants' response to his RFP. Plaintiff seeks an order directing Defendants to produce "the surveillance camera's [sic] and the documents so that plaintiff can inspect and copy." See Second Discovery Motion at 1. Plaintiff provides a copy of Defendants' response to his RFP, which certifies the response was mailed to Plaintiff on July 20, 2018, see RFP Response at 7,[5] which was within the discovery deadline set by this Court, see Order (Doc. 96). However, Plaintiff states that he sent a letter to Defendants' counsel on July 2, 2018, requesting to inspect relevant documents and view surveillance videos before the discovery period ended. See Second Discovery Motion at 2. According to Plaintiff, Defendants' counsel did not respond to his letter and did not make the disclosed materials available to him prior to the close of discovery. Id.

Plaintiff's argument that he should have been permitted to inspect the disclosed documents prior to the discovery deadline is misguided. Importantly, Defendants timely responded to the RFP on July 20, 2018. See RFP Response at 7. In response to each of the disputed RFPs, Nos. 3, 10, 11, 12, 14, and 19, Defendants stated, "Plaintiff will be

---

[4] To the extent Plaintiff is attempting to identify possible witnesses to either of the incidents that occurred on June 22, 2012, which he may need to defend against a motion for summary judgment, he has an opportunity to learn the names of potential witnesses because this Court grants his Motion for Leave. See Section VI, this Order.

[5] Plaintiff provided a copy of Defendants' RFP Response as an exhibit in support of both his Second Discovery Motion (Doc. 98-2) and his First Discovery Motion. For ease of reference, the Court will continue to cite to the exhibit attached to Plaintiff's First Discovery Motion (Doc. 97-2). The documents are identical.

provided with all available documentation related to th[e] request." See id. Plaintiff, an inmate of the Florida penal system, was not entitled to inspect the documents and videos by the discovery deadline. Defendants' counsel transmitted the relevant documents to prison officials and requested that callouts be scheduled. According to the document review log, which Plaintiff refused to sign (Doc. 104-1), prison officials provided Plaintiff almost seven hours over two days, August 16th and 17th, to review the produced documents, including video surveillance.[6] Thus, Plaintiff's Second Discovery Motion is due to be denied as moot. To the extent Plaintiff did not receive sufficient time in which to review the documents and video surveillance in this case, he does not assert such an argument in the Second Discovery Motion. He does assert such an argument, however, in his Motion for an Order (Doc. 110), which the Court will address next.

### IV. Motion for an Order

In his Motion for an Order (Doc. 110; Motion), which Plaintiff supports with a sworn affidavit (Doc. 110-1; Plaintiff Affidavit), he asserts that Defendants' counsel informed Plaintiff by phone on August 3, 2018, that he (counsel) would ask prison officials to schedule separate callouts for Plaintiff's review of documents disclosed in this matter and those disclosed in a separate civil rights matter also pending before this Court. See Motion at 2. However, Plaintiff states that he was not provided with separate callouts for the two cases. Id.; Plaintiff Affidavit at 2. He also states that he was provided with twelve DVDs

---

[6] Notably, on August 3, 2018, Defendants' counsel spoke to Plaintiff about outstanding discovery in this and another pending civil rights case, informing Plaintiff that he would be sending the discovery documents to the prison. See Second Response at 2. According to Defendants' counsel, Plaintiff did not raise any objection or discovery-related issues during that discussion. Id. Defendants' counsel does not state whether he addressed with Plaintiff his July 2, 2018 letter about viewing disclosed documents.

8

but no documents. See Plaintiff Affidavit at 2. Thus, he refused to sign the document review log. Plaintiff requests additional time to review all the disclosed documents, including the surveillance videos, and to file a motion to compel should one be warranted after his review of the materials. See Motion at 1.

In objection to Plaintiff's Motion for an Order (Doc. 112), Defendants provide the declarations of two FDC employees (Docs. 112-1; Young Dec., 112-2; Lemire Dec.), one of whom confirms that Plaintiff's callouts for both of his cases were combined. See Lemire Dec. ¶ 3. Both declarants, however, contradict Plaintiff's assertion that he was denied an opportunity to review the documents. In fact, both declarants state that Plaintiff refused to review the documents for either of his cases. See Young Dec. ¶ 4; Lemire Dec. ¶ 4. They attach the document review logs for both days, which both lack Plaintiff's signature. On one of the document review logs (Doc. 112-1 at 3), Plaintiff handwrote the following: "I need more time to review the surveillance camera's [sic]."

Plaintiff's Motion for an Order is due to be granted to the extent that Plaintiff should be afforded an opportunity to review the evidence in this case separately from the evidence in his other pending case.

## V. Third Discovery Motion

In his Third Discovery Motion, Plaintiff seeks an order directing Defendants to respond to interrogatories and imposing sanctions pursuant to Rule 37, Federal Rules of Civil Procedure. Specifically, Plaintiff asserts that Defendants Parrish, Sodrel, and Greene failed to timely respond to interrogatories directed to them. See Third Discovery Motion at 2.

In their response (Doc. 106; Third Response), Defendants assert that they timely answered Plaintiff's interrogatories by the discovery deadline. See Third Response at 2. Defendants' counsel states, however, that Defendant Greene's answers were mistakenly mailed to Plaintiff unsigned, though a signed copy was mailed to Plaintiff on July 27, 2018. Id. Defendants' counsel mailed responses on behalf of Defendants Sodrel and Parrish with objections only, explaining in a letter to Plaintiff that these two Defendants were on extended medical leave. Defendants' counsel assured Plaintiff he would transmit substantive answers once he was able to contact the two Defendants. See id. Accordingly, Defendants' counsel transmitted Defendant Sodrel's signed interrogatory answers on August 13, 2018. Defendants' counsel noted that, as of August 17, 2018, he still had not been able to contact Defendant Parrish who was schedule to be on medical leave through September 5, 2018. See id.

The Court finds that Plaintiff's Third Discovery Motion is due to be denied in part as moot and granted in part. The motion is due to be denied as moot with respect to Plaintiff's request that Defendants Greene and Sodrel be ordered to answer Plaintiff's interrogatories directed to them. They have done so. The motion is due to be granted only to the extent that Defendant Parrish's signed answers to interrogatories should be served on Plaintiff.

### VI. Motion for Leave

In his Motion for Leave, Plaintiff seeks an order permitting him to exceed the maximum number of interrogatories allowed under Rule 33, Federal Rules of Civil Procedure. Specifically, Plaintiff seeks an order directing Defendant Woodall to answer the interrogatories to which Woodall asserted an objection pursuant to Rule 33,

maintaining that Plaintiff had exceeded the allowable number of interrogatories. See Motion for Leave at 1-2. Plaintiff propounded twenty-three numbered interrogatories on Woodall (Doc. 100-1; Interrogatories). Woodall timely answered the interrogatories (Doc. 100-2; Woodall Answers), though he identified nine discrete subparts to Plaintiff's interrogatory No. 8, resulting in thirty-three interrogatories according to Woodall's calculation. See Woodall Answers at 4. Woodall answered and/or objected to interrogatories Nos. 1 through 16 (as numbered by Plaintiff), including the nine discrete subparts for No. 8. He objected to interrogatories Nos. 17 through 23 (as numbered by Plaintiff). See generally id.

In his Motion for Leave, Plaintiff does not object to Woodall's break-down of interrogatory No. 8 into discrete subparts. Interrogatory No. 8 reads as follows:

> Please describe in detail the duty of Defendants Ernest Sodrel, Heath Box, Victor Nieves, R.E. Woodall, Daniel Howell, Kenny Polanco, Boyzie Perry, John Greene, Kenneth Tucker, and Brandy Parrish at the time of the incident sued upon. In describing the duties, state whether those duties were the same in the year of 2012.

See Interrogatories at 4. Defendant Woodall answered interrogatory No. 8, though treated Plaintiff's inquiry as to each named Defendant as a separate, distinct interrogatory. While interrogatory No. 8 arguably includes discrete subparts, Plaintiff does not appear to propound this interrogatory with the intent to harass or annoy Defendants. And, Plaintiff, an inmate proceeding pro se, may not have understood this interrogatory to contain "discrete subparts" that would separately count toward the maximum number allowed under Rule 33. Indeed, trained practitioners and judges recognize that identifying whether an interrogatory has discrete subparts can be "a difficult task." See, e.g., Commodores

Entm't Corp. v. McClary, No. 614CV1335ORL37GJK, 2015 WL 12843874, at *2 (M.D. Fla. Nov. 6, 2015) ("[R]esolving questions of whether a subpart to an interrogatory is 'discrete' under Rule 33 such that it should be counted separately can be a difficult task and courts considering this question have applied various tests.").

Moreover, the Advisory Committee Notes explaining the 1993 Amendment to Rule 33 provide that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Fed. R. Civ. P. 33(a)(1), Advisory Committee Notes. Interrogatory No. 8 can be read to address one subject or a common theme—Defendants' job duties at the relevant time. However, even if interrogatory No. 8 includes nine discrete sub-parts, the Court find that Plaintiff's request for leave to propound the additional, remaining interrogatories (Nos. 17 through 23) is due to be granted. Woodall should answer interrogatories Nos. 17 through 23 in good faith, asserting only appropriate objections.[7]

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion to Compel (Doc. 97) is **GRANTED in part** and **DENIED in part**. The motion is granted to the extent that the Court overrules Defendants' objections to Plaintiff's RFPs Nos. 13, 17, and 18. Defendants must respond to RFP Nos. 13, 17,

---

[7] In answering interrogatories Nos. 21 and 22, which request in part the names of inmates who witnessed or were in a position to witness the incidents, the Court reiterates that such information does not appear subject to the protections of HIPAA.

and 18, as instructed in this Order, by **October 19, 2018**. In all other respects, the motion is **DENIED**.

2. Plaintiff's Motion to Compel (Doc. 98) is **DENIED as moot**.

3. Plaintiff's Motion for an Order (Doc. 110) is **GRANTED** to the extent that the Defendants' counsel shall coordinate with the appropriate prison personnel to arrange for Plaintiff to have up to **12 hours** of callouts so that he has a fair opportunity to inspect the documents and surveillance videos associated with this case only. His callouts for this case and his other pending case, Case No. 3:14-cv-248-J-32MCR, should not be combined. In addition, Defendants should coordinate with the appropriate prison personnel to ensure that Plaintiff has an opportunity to review the documents produced pursuant to this Order <u>and</u> to review the documents and surveillance videos previously made available to Plaintiff in response to the RFP. The 12 hours do not have to be continuous but can be separated into appropriate time periods. The 12 hours must be completed by **November 2, 2018**. By **November 9, 2018**, Defendants must file a notice of compliance, advising that Plaintiff has completed the 12 hours of callouts.

To the extent Plaintiff suggests that surveillance videos exist that were not disclosed to him previously, Plaintiff should attempt in good faith[8] to confer with Defendants' counsel. The parties should also confer in good faith if additional discovery disputes arise after Plaintiff has completed his callouts. If the parties cannot resolve any outstanding discovery issues after conferring in good faith, Plaintiff may file a motion to

---

[8] The Court reminds the parties that a failure to confer in good faith to resolve discovery matters, future motions may be subject to denial or other appropriate sanctions.

compel by **November 16, 2018**. If a motion to compel is filed, Defendants shall file a response by **November 30, 2018**.

4. Plaintiff's Motion to Compel and for Sanctions (Doc. 99) is **DENIED in part as moot** and **GRANTED in part**. The motion is **GRANTED** only to the extent that Defendant Parrish's signed answers to interrogatories should be served on Plaintiff by **October 19, 2018** if not already served. Plaintiff's request for the imposition of sanctions is **DENIED**.

5. Plaintiff's Motion for Leave to Serve Additional Interrogatories (Doc. 100) is **GRANTED**. By **October 19, 2018**, Defendant Woodall must respond to interrogatories Nos. 17 through 23, asserting only appropriate objections.

6. Plaintiff's Motion to Appoint Counsel (Doc. 101) is **DENIED without prejudice** subject to the Court's reconsideration if the case proceeds to settlement conference or trial. A court may ask counsel to represent a person who cannot afford one. See 28 U.S.C. § 1915(e)(1). But a plaintiff in a civil case does not have a constitutional right to counsel, and courts have broad discretion in deciding whether to appoint counsel. Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999). A court should appoint counsel in a civil case only if there are "exceptional circumstances." Id. In determining whether to appoint counsel, a court may consider the type and complexity of the case, whether the plaintiff can adequately investigate and present his case, and whether the case proceeds to trial. Ulmer v. Chancellor, 691 F.2d 209, 213 (5th Cir. 1982) (cited with approval in Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1065 n.11 (11th Cir. 2013)). Plaintiff has not presented exceptional circumstances that would warrant the appointment of counsel at this time.

7. Plaintiff's Motion for Leave to File a Reply (Doc. 102) is **DENIED**.

8. Defendants' Motion for Extension of Time to File Summary Judgment (Doc. 108) is **GRANTED**. Considering the rulings on Plaintiff's various discovery motions, the Court will extend the deadline for filing dispositive motions to **December 17, 2018**. Responses to dispositive motions are due by **January 17, 2019**.

9. Plaintiff's Motion for an Order (Doc. 109) is **DENIED as moot**. See Defendants' Response (Doc. 111).

**DONE AND ORDERED** in Jacksonville, Florida, this 2nd day of October, 2018.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Corey Milledge, #Q12023
Counsel of Record