UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

COREY MILLEDGE,

        Plaintiff,

v.                            Case No. 3:17-cv-483-J-39MCR

KENNETH S. TUCKER, et al.,

        Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Corey Milledge initiated this action by filing a pro se civil rights complaint in the United States District Court for the Northern District of Florida (Doc. 1). The Northern District transferred the action to this Court on April 24, 2017, because a vast majority of Defendants were employed by Suwannee Correctional Institution (SCI) at the relevant time. See Order (Doc. 33). Plaintiff is proceeding on an Amended Complaint (Doc. 27; Am. Compl.) against ten individuals for two alleged use-of-force incidents that occurred on June 22, 2012, at SCI. See Am. Compl. at 10. He asserts claims under the First and Eighth Amendments. As relief, he seeks compensatory and punitive damages. Id. at 19.

Before the Court is Defendants' Motion for Summary Judgment (Doc. 128; Def. Motion) with exhibits (Docs. 128-1 through 128-

14, 139-1 through 139-3).[1] Plaintiff responded to the Motion (Doc. 136; Response) with exhibits (Docs. 135-1 through 135-17).[2] Accordingly, the motion is ripe for this Court's review.

## II. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

---

[1] Defendants re-filed exhibits B, E, and H because the original files did not upload properly.

[2] Many of the exhibits Defendants and Plaintiff offer are primarily relevant to Plaintiff's claims against the Defendants he claims used force against him. Those Defendants do not move to dismiss Plaintiff's Eighth Amendment excessive-force or failure-to-intervene claims against them. Instead, Defendants move for partial summary judgment to narrow the claims and the number of Defendants. Throughout this Order, the Court will reference individual exhibits as relevant to its discussion of the arguments Defendants raise in their Motion.

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).

On summary judgment, a party opposing the motion must point to evidence in the record to demonstrate a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). A party may not rely on conclusory assertions or speculative argument. "[U]nsupported conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion

for summary judgment." <u>Mazzola v. Davis</u>, No. 17-14662 (11th Cir.
June 11, 2019) (quoting <u>Ellis v. England</u>, 432 F.3d 1321, 1327 (11th
Cir. 2005)) (internal quotation marks omitted). <u>See also</u> <u>Cordoba
v. Dillard's, Inc.</u>, 419 F.3d 1169, 1181 (11th Cir. 2005)
("[U]nsupported speculation does not meet a party's burden of
producing some defense to a summary judgment motion.") (quoting
<u>Hedberg v. Ind. Bell Tel. Co.</u>, 47 F.3d 928, 931-32 (7th Cir. 1995))
(alteration adopted).

Substantive law determines the materiality of facts, and
"[o]nly disputes over facts that might affect the outcome of the
suit under the governing law will properly preclude the entry of
summary judgment." <u>Anderson</u>, 477 U.S. at 248. In determining
whether summary judgment is appropriate, a court "must view all
evidence and make all reasonable inferences in favor of the party
opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918,
921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca
Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Complaint Allegations

In his Complaint, which is verified under penalty of perjury,[3]
Plaintiff asserts Defendants violated his rights under the First

---

[3] The factual assertions a plaintiff makes in a verified complaint
satisfy "Rule 56's requirements for affidavits and sworn
declarations," and are therefore given the same weight as factual
statements made in an affidavit. <u>Stallworth v. Tyson</u>, 578 F. App'x
948, 950 (11th Cir. 2014).

and Eighth Amendments in connection with two uses of force that occurred on June 22, 2012. See Am. Compl. at 16-18. On the day of the incidents, Plaintiff was housed in a "transit care unit for inmates with mental health issues." Id. at 12. Plaintiff alleges Defendants Parrish, Sodrel, Greene, Box, and Polanco gratuitously beat him inside the medical room in a manner Plaintiff describes as a planned attack ("medical room incident"). Id. at 13.

Plaintiff alleges he sought help from Defendant Perry before the medical room incident. Plaintiff told Defendant Perry he thought his life was in danger because Defendants Parrish and Greene threatened to harm him. Plaintiff asserts Defendant Parrish threatened to punish him for lying about Defendant Parrish in a grievance, and Defendant Greene told Plaintiff he and other guards planned to "whoop [his] ass . . . for throwing [feces] on an officer." Id. at 12. Plaintiff asserts Defendant Perry told Plaintiff, "[there's] nothing I can do for you." Id.

The second incident occurred later in the day inside Plaintiff's cell ("cell incident"). Id. at 14. Plaintiff asserts Defendants Nieves and Howell ordered Plaintiff to put his arms through the flap to be cuffed. When Plaintiff complied, Defendants Nieves and Howell pulled his right arm through the flap, and Howell "placed handcuffs around his knuckles like brass knuckles and punched [Plaintiff] repeatedly in the hand." Id. Defendants Box, Polanco, and Greene came to his cell. Id. The cell door was opened,

and Defendant Box "leaned in the cell and punched [Plaintiff] in the face and head," while Defendant Nieves continued to hold his arm. Id. at 15. Defendants Polanco, Howell, and Greene watched. Id.

Plaintiff asserts a claim under the First Amendment (retaliation) against Defendant Parrish; a claim under the Eighth Amendment (deliberate indifference) against Defendants Woodall, Tucker, and Perry; and a claim under the Eighth Amendment (excessive force or failure to intervene) against Defendants Box, Greene, Howell, Nieves, Polanco, Parrish, and Sodrel. Id. at 16-18.

## IV. Summary of the Arguments

Defendants move to dismiss any claims for damages against them in their official capacities and argue Plaintiff is not entitled to recover compensatory and punitive damages under 42 U.S.C. § 1997e(e). See Def. Motion at 7, 13. Defendants Woodall, Tucker, and Perry seek dismissal of the claims against them for Plaintiff's failure to state a claim. Id. at 8, 11. Defendants Woodall and Tucker argue Plaintiff's claims against them are based on supervisory liability, and Plaintiff offers no facts demonstrating the requisite causal connection between their conduct and the alleged constitutional violations. Id. at 8-11. Defendant Perry asserts he cannot be liable for failing to intervene because he was not present during either force incident

and therefore, was not in a position to have intervened. Id. at 13.

In response, Plaintiff clarifies he sues Defendants in their individual capacities only. See Response at 2, 6. As to the claims against Defendants Woodall and Tucker, Plaintiff argues the facts support an inference that these supervisory Defendants knew he faced a substantial risk of harm from "subordinates," and they failed to reasonably respond to the risk. Id. at 7.

With respect to Defendant Perry, Plaintiff states Defendants misunderstand his claim. Plaintiff asserts a deliberate-indifference-failure-to-protect claim against Defendant Perry, not a failure-to-intervene claim. Id. at 16. Plaintiff argues he states a claim against Defendant Perry because he told Defendant Perry before the medical room incident that Defendants Greene and Parrish threatened to physically assault him, and he asked for protection, which Defendant Perry declined to provide. Id. at 17.

As to his injuries, Plaintiff contends Defendants beat him while he was fully restrained until he was unconscious, he had a bruised left eye with swelling, and he sustained injuries to his right shoulder and back. Id. at 23-24. He claims he sought medical treatment after the incidents. Id. at 24.

## V. Legal Analysis & Conclusions of Law

### A. Eleventh Amendment Immunity

Defendants assert they are entitled to Eleventh Amendment immunity as to any claims against them for damages in their official capacities. See Def. Motion at 7-8. Plaintiff does not seek damages from Defendants in their official capacities. See Response at 2, 6. As such, Defendants' motion is due to be denied as moot to the extent they assert Eleventh Amendment immunity.

### B. Claims Against Defendants Woodall and Tucker

Plaintiff contends Defendants Woodall and Tucker were deliberately indifferent to his reports that he faced a risk of serious harm at SCI. Am. Compl. at 16-17. At the time of the alleged events, Defendant Woodall was the Assistant Warden at SCI, and Defendant Tucker was the Secretary of the Florida Department of Corrections (FDOC). Id. at 1, 2. These Defendants did not personally participate in the alleged uses-of-force. Plaintiff claims Defendants Woodall and Tucker knew he faced a risk of serious harm at SCI because he reported his fears to their respective offices by filing grievances. See Response at 7, 11; Pl. Aff. ¶¶ 2, 4, 5-7. He also claims to have orally informed Defendant Woodall that he had been threatened. See Pl. Aff. ¶ 3. Defendants argue liability against a supervisor may not be based on the plaintiff's filing of grievances. Def. Motion at 8.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable . . . for the actions of a subordinate is extremely rigorous." Id. Supervisory liability arises only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotation marks and citation omitted).

> The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Alternatively, the causal connection may be established when a supervisor's "custom or policy ... result[s] in deliberate indifference to constitutional rights" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

Cottone, 326 F.3d at 1360 (internal citations omitted). See also Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (per

curiam) (affirming the district court's dismissal of the secretary of the FDOC because the plaintiff failed to allege the secretary personally participated in the alleged conduct or that the plaintiff's "injuries were the result of an official policy that [the secretary] established"). When a plaintiff's claim is premised on demonstrating prior occurrences placed a supervisor on notice of a history of widespread abuse, the plaintiff must offer evidence of abuse that was "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1048 (11th Cir. 2014) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).

Plaintiff premises liability against Defendant Woodall upon grievances he directed to Woodall, both in person and in writing. See Pl. Aff. ¶¶ 2-4; Am. Compl. at 11. Plaintiff provides two grievances, which he directed to the "Warden" of SCI: (1) one dated March 28, 2011, in which Plaintiff reported that nurses Parrish, Parrish (husband and wife), and Robinson beat Plaintiff in the medical room, see Pl. Ex. A at 2-3 ("2011 grievance"); and (2) a second one dated June 10, 2012, in which Plaintiff requested protection from the following officers who threatened to hurt him: McGuire, Cannon, Pope, Meriman, Robinson, Wood, and Leaving, see Pl. Ex. C at 2-3 ("2012 grievance").

Plaintiff asserts he also directly spoke to Defendant Woodall on two occasions, after he filed each of his grievances. After

10

Plaintiff filed the 2011 grievance, Plaintiff orally informed Defendant Woodall of the fear he expressed in that grievance. See Pl. Aff. ¶ 3. Plaintiff avers he "verbally told Mr. Woodall that [he] fear[ed] for [his] life and request[ed] to be placed in protective custody." Id. Plaintiff told Defendant Woodall three nurses, including Defendant Parrish, beat him in the medical room and that Defendant Parrish threatened him. Id. In his deposition (Doc. 128-13; Pl. Depo.), Plaintiff elaborated on the nature of the threat from Defendant Parrish. Plaintiff claims he told Defendant Woodall Defendant Parrish threatened to "beat [his] ass again, if [she] found out [Plaintiff] wrote a grievance against [her]." Pl. Depo. at 8.

In his affidavit, Plaintiff references having had only one conversation with Defendant Woodall, on March 31, 2011. See Pl. Aff. ¶ 3. In his deposition, however, Plaintiff testified that he had a second conversation with Defendant Woodall about the threats he reported in the 2012 grievance. See Pl. Depo. at 15-16. Plaintiff stated, "I told Mr. Woodall that I fear[ed] for my life and request[ed] to be placed in protective custody due to Sergeant Wood, Lieutenant Cannon and Colonel Leaven[4] had threatened me." Id. Plaintiff then explained that he told Defendant Woodall what each officer had said to him, repeating what he wrote in his

_____

[4] In the 2012 grievance, Plaintiff spells this officer's name as "Leaving." Pl. Ex. C at 4.

grievance. Id. at 16. According to Plaintiff, Defendant Woodall responded, "I don't care; it's a prison." Id.

Accepting Plaintiff's allegations as true, he fails to demonstrate the requisite causal connection to meet the rigorous standard for supervisory liability. First, Plaintiff does not assert or offer evidence that Woodall had notice of a "history of widespread abuse." See Cottone, 326 F.3d at 1360. Instead, Plaintiff points to only one prior incident that occurred more than one year before the incidents he alleges in this action. One incident over a one-year period does not put a supervisory official on notice of abuse that is "obvious, flagrant, and rampant." See Keith, 749 F.3d at 1048; see also Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (holding four similar instances of inmate-on-inmate assaults over a three-year period, of which the warden was aware, did not constitute evidence of deliberate indifference to a substantial risk of serious harm).

Second, Plaintiff fails to mention, much less demonstrate, a policy or custom Defendant Woodall created or adopted that resulted in a constitutional violation. See Cottone, 326 F.3d at 1360.

Third, Plaintiff fails to demonstrate Defendant Woodall directed the subordinate Defendants to act unlawfully or knew they would do so, even though Plaintiff directed oral and written grievances to Woodall. See id. As to Plaintiff's March 2011 reports of fear, there is no evidence Defendant Woodall had actual (or

subjective) knowledge Plaintiff was in a perpetual state of harm from Defendant Parrish between March 2011 and June 2012. See Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007) ("With regard to the subjective component of the Eighth Amendment claim, the Court in Farmer[5] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'").

Plaintiff testified at deposition he informed Defendant Woodall that Defendant Parrish threatened to physically assault him again if he filed another grievance against her. Pl. Depo. at 7-8. However, Plaintiff also acknowledged he had "a lot" of interactions with Defendant Parrish after the 2011 assault with no incident until more than a year later, on June 22, 2012. Id. at 5. And there is no evidence Plaintiff submitted additional grievances complaining of continuing or escalating threats from Defendant Parrish.

Even more, the 2011 grievance was forwarded to the Inspector General's Office, see Pl. Ex. A at 5, meaning the grievance process was resolved from an institutional standpoint. There is no evidence Defendant Woodall had reason to believe Plaintiff's allegations had not been properly addressed or successfully resolved such that

---

[5] Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Woodall subjectively knew Plaintiff faced a continuing threat of harm from Defendant Parrish. See Thompson v. Willis, No. 3:14CV246/MCR/EMT, 2016 WL 5339362, at *2 (N.D. Fla. June 9, 2016) ("Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.").

The June 2012 reports (oral and written) occurred closer in time to the alleged June 22, 2012 assaults. However, the requisite causal connection is still lacking. As with the 2011 grievance, the 2012 grievance was administratively processed and resolved: the response Plaintiff received informed him his complaints had been "previously addressed" through a separate formal grievance Plaintiff filed.[6] Pl. Ex. C at 5.

More importantly, in neither the written grievance nor in his oral complaint to Defendant Woodall did Plaintiff reference Defendants he proceeds against in this case. Id. at 2-4. Plaintiff complained to Defendant Woodall, orally and through his written grievance, that he felt his life was in danger from specific individuals: McGuire, Cannon, Pope, Meriman, Robinson, Wood, and Leaving or Leaven. Pl. Ex. C at 2-4; Pl. Aff. ¶ 4; Pl. Depo. at

---

[6] Plaintiff does not provide the response he received to the prior grievance, though he provides the grievance itself. In the prior grievance, dated May 30, 2012, Plaintiff complained of the same threats as those relayed in the June 10, 2012 grievance.

15-16. Plaintiff offers no evidence that the individual Defendants named in this case were involved in a plan to harm him, or that, if they were, he told Defendant Woodall as much.

Plaintiff alleges some of the officers who threatened him stated they or others would carry out the threats. See Am. Compl. at 11. For instance, Sergeant Wood allegedly told Plaintiff, "if I don't get you another officer will." Id. Even if Defendant Woodall objectively could or should have appreciated Plaintiff faced a risk of harm from corrections staff other than those Plaintiff specifically named, under the deliberate indifference standard, Defendant Woodall may not be held to account for that which he should have appreciated but did not. A supervisor's failure to appreciate a risk of harm, "while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Farmer, 511 U.S. at 838. For these reasons, Plaintiff fails to demonstrate Defendant Woodall subjectively knew Defendants would act unlawfully and permitted them to do so. See Cottone, 326 F.3d at 1360.

Plaintiff's allegations as to Defendant Tucker are even more attenuated than those against Defendant Woodall. Plaintiff premises liability against Defendant Tucker on a sole grievance dated June 11, 2012, which Plaintiff directed to the office of the Secretary of the FDOC. See Pl. Ex. D at 2-3. In the grievance, Plaintiff complained of the same threats from the same corrections

staff as those he referenced in the June 10, 2012 grievance to the Warden. Id.

Not only did Plaintiff not claim he was threatened by Defendants in this case, Defendant Tucker did not sign the grievance response, a fact Plaintiff readily acknowledges. Id. at 5; Response at 10 n.1. Plaintiff asserts it is "plausible that Defendant Tucker would review grievances . . . filed and stored at his office." Response at 10 n.1. Plausibility is not the standard for deliberate indifference. Nor are speculative assertions enough to overcome summary judgment. See Cordoba, 419 F.3d at 1181 ("[U]nsupported speculation does not meet a party's burden of producing some defense to a summary judgment motion."). Plaintiff presents no evidence upon which a reasonable jury could conclude Defendant Tucker had subjective knowledge of a risk of serious harm and with that knowledge, was deliberately indifferent to the risk. See Rodriguez, 508 F.3d at 617.

Plaintiff contends the rote referral of his complaints to the Inspector General's Office amounts to "brushing [him] off," or ignoring him. See Pl. Aff. ¶ 11. To the extent Plaintiff is unsatisfied with the grievance process or the Warden's, Assistant Warden's, or Secretary's roles within that process, he fails to state a plausible constitutional violation. See, e.g., Thomas v. Warner, 237 F. App'x 435, 437 (11th Cir. 2007) ("[A] prisoner does not have a constitutionally-protected liberty interest in an

inmate grievance procedure."). See also Harrison v. Culliver, 746 F.3d 1288, 1300 (11th Cir. 2014) ("[Section 1983] does not provide plaintiffs or courts carte blanche to micromanage local governments throughout the United States.") (quoting with alteration Connick v. Thompson, 563 U.S. 51, 68 (2011)).

Upon review of the record, the Court finds Plaintiff fails to demonstrate a causal connection between the alleged constitutional violations and any action or inaction by Defendants Woodall and Tucker. As such, he fails to state a deliberate indifference claim against Defendants Woodall and Tucker and these Defendants are due to be dismissed from this action.

### C. Claim Against Defendant Perry

Plaintiff alleges Defendant Perry was deliberately indifferent to a risk of serious harm in violation of the Eighth Amendment. See Am. Compl. at 12. He alleges he reported a threat of harm to Defendant Perry prior to the medical room incident, yet Perry failed to protect him from the subsequent attack. Id.; Pl. Aff. ¶ 3. Defendant Perry does not address Plaintiff's failure-to-protect claim; rather, Defendant Perry asserts he cannot be liable for failing to intervene in the alleged uses of force because he was not present for either incident. See Def. Motion at 13. Because the foundation of Defendant Perry's argument rests upon an inapplicable legal standard, he fails to demonstrate the

absence of a genuine issue of material fact as to Plaintiff's claim against him.

Plaintiff's allegations state a claim against Defendant Perry under the deliberate indifference standard. A prisoner establishes an Eighth Amendment violation when he shows a prison official "actually (subjectively) knows [the] inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." Rodriguez, 508 F.3d at 617 (citing Farmer, 511 U.S. at 837, 844). A prison official subjectively knows of a risk of harm to an inmate when he "disregards an excessive risk to [the] inmate's health or safety." Farmer, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from the circumstantial evidence." Rodriguez, 508 F.3d at 617 (emphasis in original) (quoting Farmer, 511 U.S. at 843).

When a prisoner presents evidence that he reported to a prison official a particularized, well-founded fear and the prison official ignores the inmate's request for protection, summary judgment is not warranted. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1102 (11th Cir. 2014) (finding a jury reasonably could infer the defendants had subjective knowledge of a risk of harm where the plaintiff expressed he feared his cellmate and the fear was "well-founded" because the cellmate set fire to the cell

earlier in the day). See also Rodriguez, 508 F.3d at 614, 616, 624 (vacating judgment in favor of defendants because the plaintiff asked for transfer and protection after gang members told him they wanted to kill him, but defendants, rather than protect the plaintiff, allowed him to be returned to general population where he was promptly stabbed by a gang member).

Plaintiff asserts he reported Defendants Greene's and Parrish's threats to Defendant Perry and asked to be placed in protective custody. See Am. Compl. at 12. Plaintiff contends, while he was in the shower cell, Defendant Greene said, "[y]ou threw [feces] on an officer, we fixing [to] whoop your ass today," and Defendant Greene ordered Plaintiff to move to the holding cell. When Plaintiff declined to come out of the shower cell, Defendant Greene sought the assistance of Defendant Perry. Plaintiff told Defendant Perry he did not want to come out of the shower cell because "Sergeant Greene had threatened him" and planned to carry out the threat when Plaintiff was moved to the holding cell. Id. Plaintiff also informed Defendant Perry what Defendant Parrish said to him: "I'm going to get you for lying on me in your grievance." Id. Plaintiff "told [Defendant] Perry that he [believed] his life was in danger and [asked] to go in protective custody." Id. Defendant Perry told Plaintiff he could do "nothing" for him. Id.

Plaintiff's allegations, accepted as true, state an Eighth Amendment violation. Defendants do not dispute or address Plaintiff's allegations that Defendant Perry failed to protect him under relevant Eighth Amendment jurisprudence. See Def. Motion at 13. As such, this claim may proceed to a factual determination by a trier of fact.

### D. Damages Available Under 42 U.S.C. § 1997e(e)

The Prison Litigation Reform Act (PLRA) requires a plaintiff seeking damages to demonstrate the alleged constitutional violation caused a physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). The PLRA does not define "physical injury." The Eleventh Circuit has explained a physical injury is one that is not simply de minimis, though it "need not be significant." See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 (11th Cir. 2014); Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007) (citing Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999)).

Bruising and scrapes fall into the category of de minimis injuries. Dixon, 225 F. App'x at 799. Accord Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010) (holding vague back injuries and scrapes amounted to de minimis injuries). See also Thompson, 551 F. App'x at 557 n.3 (describing an approach of asking whether the

injury would require a free world person to visit an emergency room or doctor) (citing Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997)).

Plaintiff avers he sustained an eye injury, which causes blurry vision, a right shoulder injury, and a back injury. See Pl. Aff. ¶ 25; Pl. Depo. at 41. In his deposition, Plaintiff explained the incidents exacerbated a previous eye injury, which he sustained in 2010. Pl. Depo. at 59-60. Plaintiff states he has "sharp shooting pain in [his] back area," he has a limited range of motion, and is unable to lift heavy objects. See Pl. Aff. ¶ 25. According to an emergency room record Plaintiff provides (Doc. 135-13; Pl. Ex. L), he had a post-use-of-force physical examination at 4:55 p.m. on June 22, 2012.[7] At that time, he had a laceration

---

[7] According to the records Defendants provide, including video evidence, Plaintiff was seen in the medical room three times on June 22, 2012. According to a use of force file (Doc. 139-1; Def. Ex. B) and the related hand-held video footage (Sealed Doc. 128-4; Def. Ex. D), Plaintiff's first visit to the medical room occurred at about 12:30 a.m. Def. Ex. B at 4; Def. Ex. D. Plaintiff was brought to the medical room because the physician ordered that he receive an ETO (emergency treatment order) injection and be placed in four-point restraints for self-injurious behavior. Plaintiff complied with the order and submitted to the injection and restraints without incident. Def. Ex. B at 4. A second use of force file (Doc. 139-2; Def. Ex. E), records the second medical room visit occurred at about 11:40 a.m. Def. Ex. E at 2. Guards escorted Plaintiff to the medical room for a mouth swab. Id. According to the force report, Plaintiff lunged at the nurse (Defendant Parrish) and bit the nurse's finger. Id. Spontaneous force was used to subdue Plaintiff. Id. The only injury noted during the post-use-of-force examination was a laceration to Plaintiff's right arm, which he inflicted himself. Id. at 10-11. A third use of force file (Doc. 139-3; Def. Ex. H), records

on his right arm (which was self-inflicted) and a laceration above his left eye. Pl Ex. L at 3. The nurse noted no bleeding or swelling, and the injury required no treatment. Id. at 2. There is no reference to back or arm injuries, and Plaintiff provides no medical records indicating he sought or received treatment for his back or shoulder.

In his Response, Plaintiff contends prison officials destroyed his medical records and sick-call requests, and he asks that the Court order Defendants to provide all medical records and sick-call requests related to the injuries he claims to have sustained at the hands of Defendants. See Response at 30; see also Pl. Aff. ¶ 27. Given Plaintiff's assertions that prison officials destroyed medical records and that he did not have sufficient time to review his medical records to effectively respond to Defendants' Motion, the Court ordered Defendants to arrange for Plaintiff to have twelve additional hours to review his medical records. See Order (Doc. 140). The Court also afforded Plaintiff additional time to supplement his Response after completing his call-outs. See Orders (Docs. 140, 148, 150).

---

Plaintiff returning to the medical room again at about 5:05 p.m., after another spontaneous use of force prompted by Plaintiff's non-compliance when officers attempted to remove him from his cell for transport. Def. Ex. H at 6, 12. Defendants Howell, Nieves, and Box were involved in that use of force. Id. at 6. The post-use-of-force medical exam revealed the right arm laceration and an abrasion above Plaintiff's left eye. Id. at 12-13.

Defendants complied with the Court's Order to provide Plaintiff additional time to review his medical records. See Def. Notice of Compliance (Doc. 142); Order (Doc. 148). Since completing his call-outs, Plaintiff has chosen to stand on his Response, though he has provided no additional records for the Court's consideration. See Pl. Notice (Doc. 151) (stating Plaintiff has "no choice but to stand on his already filed Response and exhibits"). Instead of supplementing his Response, Plaintiff filed a one-page notice (Doc. 154; Notice), asking the Court to take judicial notice of an Eleventh Circuit opinion finding bruises, swelling, loosened teeth, and a cracked dental plate constitute more than de minimis injuries. See Notice at 1 (citing Hasemeier v. Shepard, 252 F. App'x 282 (11th Cir. 2007)).

Despite having been provided countless hours to review his medical records, Plaintiff continues to assert Defendants are withholding some of his medical records. See Motions (Docs. 143, 146, 149). In one such motion (Doc. 143), Plaintiff acknowledged Defendants arranged for him to review a disk containing his medical records from 2012 and part of 2013; however, Plaintiff said records for the remainder of 2013 and beyond were not provided.[8]

---

[8] Defendants' attorney certified Defendants complied with the Court's Order by providing Plaintiff fourteen and one-half hours to review the medical and mental health records Defendants had in their possession. See Response to Motion (Doc. 147). Defendants' counsel stressed that Plaintiff was provided all records Defendants possess, a total of 1,590 pages. As such, the Court

Plaintiff suggests the missing records will show he sustained additional injuries other than a bruise above his eye. See Am. Compl. at 15 (alleging injuries to his right shoulder and back); Pl. Aff. ¶ 25 (asserting he sought medical treatment for his shoulder and back injuries). In his deposition, Plaintiff testified he saw a doctor, who prescribed pain medications for his shoulder injury. Pl. Depo. at 62. Plaintiff testified his back is "messed up to this day," and forces him to walk "real slow." Id. at 63. Plaintiff said he submitted "a lot" of sick-call requests and he received pain medication but was not referred to a specialist or provided any other treatment. Id.

Because Plaintiff contends medical records were destroyed or are missing and because he demonstrates difficulty obtaining records that should exist if his allegations are true, there remain genuine issues of material fact and credibility determinations for resolution by a jury. Accordingly, Defendants' motion is due to be denied to the extent they ask the Court to find as a matter of law Plaintiff is prohibited from seeking compensatory and punitive damages. Whether Plaintiff can prove he sustained more than de minimis injuries will be for a jury's determination.

---

found Defendants complied with the Court's Order and that Plaintiff was afforded sufficient time to review the medical records in Defendants' possession. See Orders (Doc. 148, 150).

**VI. Plaintiff's Motion to Stay & Appointment of Counsel**

Also before the Court is Plaintiff's Motion to Stay the proceedings (Doc. 152; Pl. Motion), because he contends Defendant Woodall's supplemental response to his interrogatory #21 was insufficient and not in compliance with this Court's Order (Doc. 148). Pl. Motion at 2-3. On June 3, 2019, the Court directed Defendant Woodall to supplement his[9] response to Plaintiff's interrogatory in which Plaintiff requested the following: "the name, rank and identification number of each officer and inmate who saw or heard or was in a position to see or hear or who is believed to have information about the incident [that] occurred on June 22, 2012." See Order (Doc. 148). The Court ordered Defendant Woodall to undertake a reasonable inquiry to obtain information available to him or under his control and to disclose to Plaintiff any non-privileged responsive information.

In response to the Motion to Stay, Defendant Woodall contends he provided information responsive to the request (Doc. 155), and he provides a copy of the response (Doc. 155-1; Def. Interr. Resp). In the interrogatory response, Defendant Woodall disclosed the names of corrections staff who were present for the alleged use-of-force incidents. Def. Interr. Resp. at 3. However, Defendant

---

[9] Plaintiff refers to Defendant Woodall as a male. In a use-of-force file, Defendant Woodall is referenced as female. See Def. Ex. B at 4. The Court will continue to use the male pronoun.

Woodall states he is unable to provide the names of inmates who may have witnessed the incidents because, Woodall contends, a list of inmates who were on the medical ward or housed on the mental health unit would require a review of protected health information subject to HIPAA protections.

Defendants' counsel provides no explanation or analysis for the proposition that HIPAA prevents Defendant Woodall from obtaining and providing to Plaintiff the names of inmates who may have been witness to the alleged incidents. Plaintiff is not asking for other inmates' medical records or information about their medical treatment. He is simply requesting the names of inmates who may have witnessed the incidents, which Defendants assert did not occur as Plaintiff describes.[10]

Given the Court's ruling that Defendant Woodall is due to be dismissed from this action, Plaintiff's Motion to Stay, which is based on a discovery dispute between Plaintiff and Defendant Woodall, is to some extent moot. However, the Court recognizes there remains a discovery dispute between the parties to the extent Plaintiff's efforts to identify potential witnesses have been

---

[10] Because Defendants do not ask the Court to dismiss the claims against those individuals Plaintiff alleges physically assaulted him on June 22, 2012, the Court's ruling on the Motion for Summary Judgment prior to the resolution of this discovery dispute does not prejudice Plaintiff.

hampered. The Court is unable to resolve the discovery dispute based upon the briefing before it.

This Court has broad discretion in determining whether the appointment of counsel is appropriate in a civil rights action. Under these circumstances and at this point in the proceedings, the Court finds Plaintiff is entitled to the assistance of a trained practitioner. Defendants are represented by counsel, the parties demand a jury trial, and there are sufficiently complex factual and constitutional issues involved in this litigation. Plaintiff will require assistance of counsel to help him develop his theory of the case, including the allegations related to the force incidents and the nature and extent of any injuries. He will need assistance to present his case at a settlement conference and, if the case does not settle, at pretrial conference and trial.

Therefore, the Court will refer this case to the Jacksonville Division Civil Pro Bono Appointment Program. If counsel is appointed to represent Plaintiff, the Court will afford counsel an opportunity to file a motion to reopen discovery for a limited period if counsel deems it necessary.

Accordingly, it is

**ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 128) is **GRANTED in part** and **DENIED in part.** The Motion is **GRANTED** to the extent Defendants Woodall and Tucker are subject to dismissal

with prejudice for Plaintiff's failure to state a claim against them. Judgment to that effect will be withheld pending adjudication of the action as a whole. <u>See</u> Fed. R. Civ. P. 54. In all other respects, the Motion (Doc. 128) is **DENIED** as stated herein.

2.    Plaintiff's Motion to Stay (Doc. 152) is **DENIED as moot** to the extent Defendant Woodall is subject to dismissal.

3.    This case is **referred** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of the Court may seek counsel to represent Plaintiff.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of August, 2019.

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Corey Milledge
Counsel of Record